```
 1                IN THE UNITED STATES DISTRICT COURT

 2                     FOR THE DISTRICT OF HAWAII

 3   ROCKY FUJIO TAKUSHI,         )
     individually and as Trustee  )
 4   of the Albert G. Takushi     )
     Revocable Living Trust dated )
 5   April 11, 2007,              )
                                  )   Civil No. CV 11-00189 LEK-KSC
 6          Plaintiff,            )
                                  )   Honolulu, Hawaii
 7      vs.                       )   June 13, 2011
                                  )   10:37 a.m.
 8   BAC HOME LOANS SERVICING,    )
     LP, A Texas Limited          )
 9   Partnership, et al.,         )
                                  )   Defendant BAC Home Loans
10          Defendants.           )   Servicing, LP's Motion to
     _____)   Dismiss Plaintiff's Complaint
11
                        TRANSCRIPT OF PROCEEDINGS
12             BEFORE THE HONORABLE LESLIE E. KOBAYASHI
                  UNITED STATES DISTRICT COURT JUDGE
13
     APPEARANCES:
14
     For the Plaintiff:        GARY VICTOR DUBIN, ESQ.
15                             Dubin Law Offices
                               55 Merchant Street, Suite 3100
16                             Honolulu, Hawaii 96813

17
     For the Defendant:        ANDREW JAMES LAUTENBACH, ESQ.
18                             Starn O'Toole Marcus & Fisher
                               733 Bishop Street, Ste. 1900
19                             Honolulu, Hawaii 96813

20


21
     Court Reporter:           Katherine Eismann, CSR, CRR, RDR
22                             United States District Court
                               300 Ala Moana Boulevard, C-338
23                             Honolulu, Hawaii 96850
                               (808)554-5652  ke@hid.uscourts.gov
24
     Proceedings reported by machine shorthand, transcript produced
25   by computer-aided transcription.
```

```
 1                (Monday, June 13, 2011, 10:37 a.m.)
 2                            --oOo--
 3           COURTROOM MANAGER:  Civil 11-00189 LEK-KSC, Rocky
 4  Fujio Takushi, individually and as trustee of the Albert G.
 5  Takushi Revocable Living Trust dated April 11, 2007, versus BAC
 6  Home Loans Servicing, LP, a Texas Limited Partnership, et al.
 7           This case has been call for a hearing on defendant
 8  BAC Home Loans Servicing, LP's Motion to Dismiss Plaintiff's
 9  Complaint.
10           Counsel, please make your appearances for the record.
11           MR. LAUTENBACH:  Good morning, Your Honor.  Andrew
12  Lautenbach on behalf of defendant BAC Home Loans Servicing.
13           THE COURT:  Good morning, Mr. Lautenbach.
14           Mr. Dubin.
15           MR. DUBIN:  Good morning, Your Honor.  Gary Dubin
16  appearing for the plaintiff Rocky Takushi opposing the motion.
17           THE COURT:  All right.  Good morning to you both.  I
18  had an opportunity to read through your submissions and
19  attachments.
20           I will give you an oral inclination that is just an
21  inclination.  It's not my final ruling, and I am happy to hear
22  what your thoughts are in addressing perhaps the questions that
23  I have raised.
24           The Court's inclined to grant the motion on the basis
25  that plaintiff has no standing.  Even if plaintiff has
```

1  standing, the Statute of Repose on the TILA claim, although
2  there would be a one-year period for the claim for damages,
3  that hasn't expired. And I find -- I'm inclined to find there
4  is no separate right to declaratory relief.
5  	I'm particularly interested in plaintiff's arguments
6  with regard to standing. Obviously, that's a threshold issue
7  in this matter. And I am at this point inclined to be
8  persuaded with the case law that defendant has cited with
9  regard to standing, because it seems pretty clear from the
10 documents that were attached with regard to the mortgage that
11 Mr. Albert Takushi was the borrower as opposed to plaintiff,
12 Rocky Takushi.
13 	And I understand there's this argument with regard to
14 Mr. Rocky Takushi being the trustee of the living trust for
15 Mr. Albert Takushi, but there has been case law submitted that
16 the Court's inclined to find is persuasive that as the trustee
17 for a living trust is not sufficient to support standing. That
18 it's really the borrower that you have to show that would have
19 standing.
20 	Now, I understand that Mr. Albert Takushi,
21 unfortunately, is now deceased. And I would be interested in
22 hearing, you know, given that and that he was the borrower for
23 standing, is it his estate then that would have that claim? I
24 know you are talking about amending it and bringing in
25 Mrs. Takushi, his widow. But again, she wasn't the borrower.

1  It's clear that he was the borrower solely as opposed to them
2  jointly borrowing the money.  So I'm not quite sure that would
3  actually cure anything.
4          So, those are some of the questions the Court has,
5  and if you could educate me on those, I would be very happy to
6  receive that information.
7          Given my inclination, I'm going to ask Mr. Dubin if
8  he would argue first.
9          MR. LAUTENBACH:  Very well.
10         THE COURT:  All right.  Thank you.  Mr. Dubin.
11         MR. DUBIN:  Thank you, Your Honor.  I hope to
12 persuade you that my client does have standing.
13         THE COURT:  All right.  Thank you.
14         MR. DUBIN:  It is true this is an unusual set of
15 facts.  The plaintiff is not only the trustee but he is also a
16 heir.  And I pointed out the case law, Page 6 and 7 of our
17 memo, in *James versus Home Construction Company of Mobile,*
18 *Inc.*, 621 Federal 2nd, 727, the Fifth Circuit, we find that
19 Federal Truth in Lending Act action under 1635 survives the
20 death of the plaintiff.
21         Then we go further, and I have cited the decision in
22 the Third Circuit, 898 Federal 2nd 896, on the top of Page 7,
23 *Smith versus Fidelity Consumer Discount*, holding that the right
24 of rescission invoked after the borrower's death is held to
25 survive in favor of decedent's heirs, son and daughter-in-law.

1        And in fact in this case, the Court will note -- and
2    I don't think your inclination took this into account -- that
3    he is not only suing individually and as trustee, but the same
4    is true in the notice of rescission.
5        So according to the only federal case law we have, an
6    heir, in this case the son, after the death can invoke the
7    right of rescission.  And I also point out that nothing in the
8    opposition papers even addressed that issue.
9        So, from my research, it's clear that as was stated
10   in the *Smith* case, that the son being an heir can in fact
11   exercise the right of rescission.
12       Now, what's further interesting is that this Court,
13   Chief Judge Mollway, twice and in my cases also Judge Seabright
14   has held that you only have to cancel within three years and
15   then you have another year in which to file a lawsuit.  And I
16   notice that that's where the law -- the case law is in the
17   federal courts.
18       For example, in *Calvin versus American Fidelity*
19   *Mortgage Services, Inc.*, number -- it's a Civil Case 10-7213,
20   which so far has been reported in West Law, 2011 West Law
21   167-2064, from the District Court in the Northern District of
22   Illinois, this was just decided last month.  They held that the
23   Truth in Lending Act requires only that a borrower give notice
24   of rescission not bring suit within three years of the loan's
25   consummation.

1      And that's exactly what this Court has held in three
2  of my cases with Judge Mollway and Judge Seabright.
3      THE COURT: I agree with you. I think there's a year
4  after you give notice, and clearly that was given, but that's
5  for a claim for damages.
6      MR. DUBIN: Okay. But that's also for rescission,
7  not just for damages.
8      THE COURT: Okay.
9      MR. DUBIN: Judge Mollway held -- Your Honor wants to
10 check those case. Those are rescission cases such as the --
11 *Peyton* case, and the right of rescission was upheld in those
12 cases. Then what's curious on Page 10 of the reply paper, we
13 are told that the defendant here, BAC Home Loans, was the
14 servicer of the loan. And we are told because of that, the
15 complaint is defective.
16     I just wanted to point out to the Court that in
17 Exhibit 5 to the opposition papers, the notice of mortgagee's
18 intention to foreclose under power of sale, on Page 1, names
19 BAC as the mortgagee. The servicer doesn't have the ability to
20 foreclose. And so they call themselves the mortgagee and then
21 their attorney here says that they are not the holder of the
22 mortgage.
23     To that extent -- and that's a -- what we call a
24 judicial admission. To that extent, I think the complaint is
25 very viable, because we are challenging the standing of BAC to

1  have done this nonjudicial foreclosure.
2         So, on that basis -- and those legal precedents have
3  not been even challenged.  The cases that Your Honor said you
4  thought were persuasive and the motion or the reply paper did
5  not address the issue of the heir.
6         Now, in reality, I think I could -- given what we
7  know now, I could in fact present the Court with a much better
8  pleading, and my intention has been to seek leave to file an
9  amended pleading which I think would make a lot of these things
10 clearer.  The only issue is the personal representative of
11 course wants to come into the case.  And the only issue is
12 whether they would -- she would need separate counsel or not.
13        But I would say within a couple of weeks I would like
14 to present a motion for leave to file an amended complaint.
15 And if the Court wanted to grant that now, that would be --
16 that would be helpful and save some time.  And I think I
17 could -- I could address all these issues in a way which would
18 be much more persuasive.
19        But I think the way it stands now, the only case law
20 I was able to find individually, the plaintiff, as an heir, as
21 the son, had a right to rescind, and it was done consistent
22 with the timing that has already been determined in the
23 circuit, although, of course, Your Honor could disagree with
24 your colleagues.  But Judge Mollway and Judge Seabright have --
25 you know, surprisingly -- it's funny you can -- somebody, you

1  can take one case and people can read it differently.
2      The *Miguel* case was actually a case of mine, and I
3  think that Judge Seabright and Judge Mollway are reading it
4  correctly that you can -- you have an extra year in which to
5  sue for rescission, not just -- not just for damages.
6      So, I hope that clarifies it. That's really the best
7  I can do on that issue of standing.
8      THE COURT: Okay. Thank you very much.
9      MR. LAUTENBACH: Good morning, Your Honor.
10     THE COURT: Good morning.
11     MR. LAUTENBACH: Just to start on the issue of
12 standing, there is nothing in the record to indicate that Rocky
13 Takushi received the property through succession as an heir.
14 Instead it appears, from what's in the record, that it went to
15 the wife and was subsequently transferred into the trust, in
16 which case regardless of whether or not there's an argument
17 that Rocky was an heir, the facts don't tend to support that
18 position.
19     I think the *Nash* case is directly on point. The
20 Ninth Circuit gave a clear direction that the trustee of a
21 trust that holds the property does not have standing to assert
22 TILA claims where they were not the borrower. So our position
23 on that is clear, and I think the inclination was correct.
24     As for the case being time barred --
25     THE COURT: Can I ask you a question on that?

1         MR. LAUTENBACH: Sure.

2         THE COURT: In terms of heirs though, would you agree
3 though that if the facts were different in this case -- because
4 it does appear that -- I mean, that's all that we can surmise
5 from what's attached to the moving papers is that Mrs. Takushi
6 then became the sole owner of the property and then apparently
7 it was transferred to the trust.

8         MR. LAUTENBACH: Well, Your Honor, the cases that
9 plaintiff cites are from other circuits, and I haven't seen any
10 Ninth Circuit precedent to support that position. However,
11 that's not the situation that's before us today, so --

12         THE COURT: Right. And then Rocky Takushi didn't --
13 I mean he may eventually be an heir or he might not.

14         MR. LAUTENBACH: Right.

15         THE COURT: I mean maybe it will be --

16         MR. LAUTENBACH: Exactly. So to answer your
17 question --

18         THE COURT: Actually, the property's sold, so he
19 can't be an heir, I guess.

20         MR. LAUTENBACH: Not of this property.

21         THE COURT: But not this property, yeah.

22         MR. LAUTENBACH: So I guess the answer to your
23 question is, frankly, I don't know the answer to that.

24         THE COURT: Okay.

25         MR. LAUTENBACH: But that's not what's before the

1  Court this morning.
2         THE COURT: Okay.
3         MR. LAUTENBACH: As for the statute of limitations, I
4  believe that your read of the *Miguel* case is correct. There is
5  an absolute three-year Statute of Repose as to the rescission
6  claim.
7         THE COURT: Okay.
8         MR. LAUTENBACH: Now if there were evidence of an
9  improper refusal to rescind, that would give rise to an
10 additional year to bring a damages claim. And there may be
11 some differences of opinion on that.
12        I think the *Ramos* case that we cite is right on
13 point. It's very clear. If the borrower files his or her suit
14 over three years from the date of the loan's consummation, the
15 Court is powerless to grant rescission. And again we agree
16 with your inclination on that point, and we would suggest that
17 the case should be dismissed with prejudice for that reason as
18 well.
19        As to the issue that we are just a servicer, I'd like
20 to point the Court to 15 USC 1641. 1641(f) provides that a
21 servicer is not treated as an owner on the basis of an
22 assignment for administrative convenience. And I know it's not
23 in the pleadings, but I believe the situation in this case was
24 that the loan was sold to Fannie Mae. BAC was the servicer.
25 The mortgage was assigned to BAC for purposes of pursuing the

1  delinquency.
2          I believed under this statute though, 1641(f) would
3  not treat it as the lender for TILA purposes for an assertion
4  of a TILA violation.  And I would also point out that to the
5  extent that the Court believes that it would be proper to treat
6  my client as an assignee for purposes of a TILA claim, 1641
7  also -- 1641(a) also governs that assertion.
8          And 1641(a) provides that you can only seek such
9  liability if the violation for which such action or proceedings
10 is brought is apparent on the face of the disclosure statement.
11         They haven't pointed to anything in the disclosure
12 statement that was insufficient or inadequate on its face, and
13 we don't believe that they can.
14         Now, it's very interesting, Your Honor, the only
15 assertion that is made in the complaint -- and their entire
16 case is based on this allegation that they didn't receive a
17 notice of the right to rescind.  But in Exhibit 7 to their
18 opposition papers, there's a notice of right to cancel signed
19 by Rocky Takushi as the attorney-in-fact for Albert Takushi and
20 dated September 21st, 2007, the same date as the mortgage.
21         Now, Your Honor, the facts in the record are clear
22 that Mr. Takushi did receive this document on the day of the
23 mortgage.  And so there's no factual support for the one
24 allegation in the complaint that they are relying on.
25         And going back to Section 1641, 1641(b) provides that

1  in the case of an assignment, which we would have here if there
2  is any potential liability at all, 1641(b) provides in part,
3  "Written acknowledgment of receipt by a person to whom a
4  statement is required to be given pursuant to this subchapter
5  shall be conclusive proof of the delivery thereof."
6           So the record indicates conclusive proof of the fact
7  that they received the one document that they claim to have not
8  received, and it's in their papers.  It's not in our papers.
9  So on that ground we would also submit that the case should be
10 dismissed with prejudice.
11          And with that, I believe that's all I have, Your
12 Honor.
13          THE COURT:  All right.  Thank you.
14          Mr. Dubin, I will give you the last word.
15          MR. DUBIN:  Thank you, Your Honor.  Just responding
16 to the points that were made.
17          THE COURT:  Yes.
18          MR. DUBIN:  First of all, we did point out on Page 6
19 of the opposing memorandum, the governing state law, Chapter
20 560, Article 2, Part 1, intestate succession that makes the son
21 an heir.  So it was not correct that we did not cover that in
22 our opposition.
23          Secondly, if Your Honor will read the decisions by --
24          THE COURT:  Well, wait.  So, I am sorry.  But as to
25 that point though, it was owned by the mother and the father,

1  so you are saying the father's share went to -- how did they
2  hold this property?  I thought it was -- it says "tenants in
3  severalty" on the mortgage papers.
4              MR. DUBIN:  I think it was the father individually.
5              THE COURT:  Okay.  Let's see.
6              MR. DUBIN:  Yes, it was the father individually.  It
7  didn't pass to the mother.  That was one of the complexities.
8              THE COURT:  What does it mean "as tenant in
9  severalty"?
10             MR. DUBIN:  By himself.
11             THE COURT:  Right.
12             MR. DUBIN:  As opposed to -- I assume.  It's kind of
13 archaic language, but --
14             THE COURT:  Right.
15             MR. DUBIN:  So he was a -- he was the only one who
16 signed the mortgage.  That's Exhibit 2.  So that means he was
17 the only one on the deed.  So again, Chapter 560, Article 2,
18 Part 1, as a matter of law the son is an heir.
19             THE COURT:  Okay.
20             MR. DUBIN:  Along with the mother.  Secondly, the
21 second point is that -- I need to clarify this.
22             If Your Honor will look at the decisions that I have
23 cited by Chief Judge Mollway and by Judge Seabright, you will
24 see particularly in the *Peyton* case -- we just had that done.
25             THE COURT:  Right.

1    MR. DUBIN: That it's not -- you have one year in
2 which to file for damages. You have one year in which to file
3 for rescission. And that was the same holding in the case I
4 cited in Illinois.
5    Now, there are some courts that have taken a
6 different view. They are in the minority in the United States.
7 But I say in this District Court, this Court has adopted the
8 majority view. And believe me, it wasn't easy. We had to
9 fight that out in those cases. But I do believe that
10 Judge Mollway and Judge Seabright came up with the right
11 conclusions.
12    Now, we also -- it was argued that -- my third point.
13 It was argued that, well, the servicer cannot be -- cannot be
14 sued. That they are not the creditor. Well, that's true, but
15 under state law, the mortgagee is defined as the owner of the
16 mortgage. And the defendant here, BAC Home loans, has already
17 made a judicial admission in the documents that are the basis
18 for the nonjudicial foreclosure in the first place that they
19 were the mortgagee.
20    If they were the servicer, as a matter of state law,
21 the nonjudicial foreclosure that we are fighting would be void.
22 So --
23    THE COURT: He's saying they were assigned the rights
24 to be able to do that.
25    MR. DUBIN: I am sorry. What?

1    THE COURT: He argues they were assigned the rights
2 to be able to do that for purposes of the foreclosure.
3    MR. DUBIN: Well, that -- Your Honor, that doesn't
4 make you the mortgagee, and we don't have such a document on
5 file. And you can't separate the note from the mortgage. So
6 someone can't say, "Okay. You can be the mortgagee." It just
7 doesn't -- as a matter of real estate law, it doesn't work that
8 way.
9    THE COURT: No, I think you are right. He's not
10 arguing that they were -- they were assigned the right to be
11 the mortgagee. They were assigned -- they were assigned
12 certain rights to enforce the rights of the mortgagee.
13    MR. DUBIN: Well, the statutes specifically say that
14 only the mortgagee can exercise the power of sale and take
15 advantage of 667-5. So, they are not the mortgagee. But
16 again, that's an issue of fact.
17    THE COURT: Right.
18    MR. DUBIN: That's not determined here anyway.
19    THE COURT: Okay.
20    MR. DUBIN: Okay. Then the fourth and last point is
21 that in reality, the Court needs to understand the
22 circumstances. This property was owned by -- in trust with
23 Rocky the trustee. The father was dying. He died a couple of
24 days after the documents were signed. If you look at his
25 signature on some of the documents, you can see that.

```
 1              Apparently what often happens is in doing the loan,
 2    they got the idea, Well, we will just transfer it to him,
 3    because he had a better credit rating.  And then we will
 4    transfer -- you can transfer it back to the trust.
 5              Now, one of the things that I am planning to do in
 6    the amended complaint is to seek to set aside the transaction.
 7    And in fact the trust was the one who made the loan, and they
 8    knew it at the time, because they were told, Well, you can just
 9    switch it back.
10              And in addition to that, I'd like to call your
11    attention the decision by Judge Sam King in 2007 in this
12    district which I point out at the bottom of Page 13, *Amonette*
13    *versus IndyMac Bank*, 515 Fed Supplement 2nd 1176.  And I am
14    quoting from that where he says, "As both settlor, trustee, and
15    beneficial owner, at least, for present TILA purposes, Amonette
16    effectively owned the property.  Her ownership interest
17    entitles her to TILA protections."
18              So in that case, like others -- and I point this out
19    because it was in this district by one of our senior judges.
20    That when you have a living trust, the Court looks past the
21    living trust to who in fact the beneficial interest is.
22              So, as I said, this is a complicated fact pattern.  I
23    feel confident myself that my client has standing, but I think
24    I can make it a lot clearer in an amended complaint.
25              THE COURT:  All right.  Thank you very much.  The
```

```
 1   Court is going -- Mr. Lautenbach, did you have something you
 2   wanted to add or clarify?  I didn't mean to cut you off.
 3          MR. LAUTENBACH:  No, no.  That's fine, Your Honor.  I
 4   could go on.
 5          THE COURT:  All right.
 6          MR. LAUTENBACH:  But I think that you understand the
 7   arguments.
 8          THE COURT:  All right.  Thank you very much.  So we
 9   will take the matter under advisement and issue a decision by
10   the end of the month.  Thank you very much.
11          MR. DUBIN:  I wanted to congratulate you for having a
12   most distinguished courtroom.
13          THE COURT:  Oh, thank you.  Thank you very much.  We
14   are very lucky.  All right.  We are in recess.
15       (Recess 11:02 a.m.)
```

```
 1                          --oOo--
 2                  COURT REPORTER'S CERTIFICATE
 3
 4      I, KATHERINE EISMANN, Official Court Reporter, United
 5   States District Court, District of Hawaii, Honolulu, Hawaii, do
 6   hereby certify that the foregoing is a true, complete, and
 7   correct transcript of the proceedings had in connection with
 8   the above-entitled matter.
 9
10   Date:  February 29, 2012.
11                            /s/ Katherine Eismann
12                            Katherine Eismann, CSR CRR RDR
```